United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PROGRESSIVE SELECT INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>KEVIN J. MCKINLEY,<br><br>Defendant. | Case No. 5:20-cv-03229-EJD<br><br>**ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 26, 28 |

Plaintiff Progressive Select Insurance Company ("Progressive")[1] initiated this declaratory relief action to resolve whether the laws of California or South Carolina govern the terms and provisions of an automobile insurance policy issued to its insured, Defendant Kevin J. McKinley ("McKinley"). The applicable law will determine the amount of insurance benefits that McKinley may recover for injuries he sustained in an automobile accident. Pending before the Court are the parties' cross-motions for summary judgment. For the reasons stated below, the Court grants Progressive's motion and denies McKinley's motion.

**I.  BACKGROUND[2]**

McKinley lived in the Charleston, South Carolina, area until 2016 when he became a traveling nurse and began working in Texas. After Texas, McKinley relocated to California. On September 30, 2019, Progressive issued a "California Auto Policy," policy number

---

[1] Progressive is an Ohio corporation with its principal place of business in Ohio. Compl. ¶2, Dkt. No. 1.
[2] The Background is a summary of only the undisputed facts, as set forth in the parties' Joint Statement of Stipulated Material Facts in Support of Cross-Motions for Summary Judgment ("JSSMF"), Dkt. No. 26-2.

Case No.: 5:20-cv-03229-EJD
ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT
1

"933237486" (the "Policy"), to McKinley as the "named insured" for the policy period of September 30, 2019, through March 30, 2020. McKinley stated in his application for the Policy that he resided in California—where he did, in fact, reside. At all times relevant to this matter, the Policy had four automobiles insured thereunder, and all of the automobiles were garaged in California. The "Declarations Page" of the Policy states that it provides up to $100,000 for one person's bodily injuries for each accident.

After Progressive issued the Policy, McKinley moved to South Carolina and established his residence there.[3] McKinley did not notify Progressive of his move to South Carolina and Progressive was unaware of McKinley's move until he filed the claim on the Policy giving rise to this lawsuit.

On November 8, 2019, McKinley was injured in an automobile accident in South Carolina when his 2019 "Mercedes-Benz AMG 4" was struck by a drunk driver. JSSMF, Fact No. 15. McKinley was not at fault in the accident. The drunk driver and the vehicle he was driving qualify as an "uninsured motor vehicle" or an "underinsured motor vehicle" as those terms are defined in the Policy. *Id.*, Fact. No. 17.

After the accident, McKinley presented a claim under the Policy to Progressive for the injuries that he sustained in the accident. *Id.*, Fact. No. 18. Progressive does not dispute that the Policy provides coverage for the accident. Rather, the parties dispute the amount of insurance benefits that McKinley may recover, which the parties agree depends on whether California law or South Carolina law governs the Policy's terms and provisions. The parties agree that if California law governs the Policy's terms and provisions, McKinley can recover a maximum amount of $75,000 for his injuries, and if South Carolina law governs, McKinley can recover well in excess

---

[3] In the complaint, Progressive alleges that "[u]pon information and belief, in late September 2019 or early October 2019, Defendant moved to South Carolina." Compl. at 4. In a request for admission, McKinley confirmed that he moved to South Carolina in late September of 2019 or early October of 2019. Progressive's Separate Statement of Fact 9, Dkt. No. 28-4 at 6. However, McKinley now disputes this time frame, asserting that he was under duress when Progressive asked him about when he moved to South Carolina. McKinley's Responsive Separate Statement of Undisputed Facts in Support of his Opp'n to Progressive Select Insur. Co.'s Mot. for Summ. J. and Reply Br., Fact 9, Dkt. No. 29-1 at 5.

Case No.: 5:20-cv-03229-EJD
ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT
2

of $75,000 for his injuries because South Carolina Code Annotated section 38-77-160 allows for what is known as "stacking" insurance policies. "Stacking" refers to an insured's recovery of damages under more than one insurance policy in succession until all of his damages are satisfied or until the total limits of all policies have been exhausted." *State Farm Mut. Auto. Ins. Co. v. Moorer*, 330 S.C. 46, 60, 496 S.E.2d 875, 883 (S.C. Ct. App. 1998). McKinley contends he is entitled to stack the insurance coverage for his four automobiles under South Carolina law.

## II. STANDARDS

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if there is sufficient evidence that a reasonable fact finder could find for the nonmoving party. *eOnline Glob., Inc. v. Google LLC*, 387 F. Supp. 3d 980, 984 (N.D. Cal. 2019). A fact is "material" if it could change the outcome of the case. *Id.* The Court must read the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

## III. DISCUSSION

The parties agree that the following two Policy provisions are relevant to determine whether California law or South Carolina law applies:

> DUTY TO REPORT CHANGES
>
> You must promptly report to us [Progressive] all changes, including additions and deletions, in policy information. This includes, but is not limited to, changes in:
> 1. your mailing address or your residence address;
> 2. the principal garaging address of any covered auto;
> 3. the residents in your household;
> 4. the persons of legal driving age residing in your household;
> 5. the persons who regularly operate a covered auto;
> 6. an operator's marital status; or
> 7. the driver's license or operator's permit status of you, a relative, or a rated resident.
>
> \* \* \*
>
> TERMS OF POLICY CONFORMED TO STATUTES
>
> If any provision of this policy fails to conform to the statutes of the

> state listed on your application as your residence, the provision shall be deemed amended to conform to such statutes. All other provisions shall be given full force and effect. Any disputes as to the coverages provided or the provisions of this policy shall be governed by the law of the state listed on your application as your residence.

Dkt. No. 28-2 at 56.

It is undisputed that on his application for the Policy, McKinley listed California as his residence. Accordingly, Progressive contends that under the plain language of the Policy, California law applies. Rather than responding directly to Progressive's contention, McKinley asks the Court to engage in a conflicts of law analysis, asserting that South Carolina law and California law on stacking insurance policies are in conflict: South Carolina is a stacking state, whereas California is a "nonstacking state."[4] McKinley contends that California's "governmental interest analysis" clearly supports the application of South Carolina law.

The Court agrees with Progressive. Under California law, "[t]he language of a contract is to govern [the contract's] interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civil Code § 1638. "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." *Alterra Excess & Surplus Ins. Co. v. Snyder*, 234 Cal. App. 4th 1390, 1402 (Cal. Ct. App. 2015). Here, the language of the Policy is clear and explicit in requiring that any disputes as to the coverages provided or the provisions of the Policy are to be governed by the law of the state of residence listed on McKinley's application. It is undisputed that McKinley's application listed California as the state of residence. Whether the Policy coverage for McKinley's four automobiles can be stacked is a dispute as to the coverages provided. Therefore, the Court concludes that under the plain language of the Policy, California law applies. *See Pitzer College v. Indian Harbor Insurance Company*, 8 Cal. 5th 93, 100 (Cal. 2019) (explaining that "the parties' choice of law generally governs unless (1) it conflicts with a state's fundamental public policy, and (2) that state has a materially greater interest in the

---

[4] *Cal. Cas. Indem. Exch. v. Pettis*, 193 Cal. App. 3d 1597, 1604-05 (Cal. Ct. App. 1987) (analyzing California Insurance Code section 11580.2).

Case No.: 5:20-cv-03229-EJD
ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT
4

determination of the issue than the contractually chosen state."[5]).[6]

Even if McKinley is correct that a conflict of interest analysis is required, the Court concludes that California law applies. California courts apply a three-step "governmental interest" test:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be the more impaired if its law were not applied.

*Kearney v. Salomon Smith Barney, Inc.*, 39 Cal.4th 95, 108 (2006). The first two steps are satisfied because applying California's and South Carolina's respective statutes regarding stacking insurance policies would lead to different available coverage for McKinley.

Turning to the third step, California courts consider the forum of the contract, the principal location of the insured risk, and the domicile of the party in assessing each state's interest. *Allstate Insur. Co. v. Nichols*, 2006 WL 8455566, at *4 (S.D. Cal. Nov. 17, 2006). Here, McKinley applied for the Policy in California and identified California as his residence. At the time McKinley applied for the Policy, the principal location of the insured risk was California, where he resided and where his four automobiles were garaged. Further, it can be inferred from these facts that the location of the insured risk was also California. Arguably, Progressive understands that automobiles are intrinsically movable, and therefore the location of the insured

---

[5] Whether California or South Carolina has a materially greater interest is discussed in the conflicts of law section of this Order.

[6] California Civil Code section 1646 also supports the application of California law. Section 1646 provides that an insurance policy is governed and interpreted "according to the law and usage of the place where it is made." Cal. Civ. Code § 1646. *See also Wheeling v. Fin. Indem. Co.*, 201 Cal. App. 2d 36 (1962) (applying section 1646 and finding the following: "[A motor vehicle liability policy] was entered into between the insurer and the insured in California, was executed in California, and the insured was then a resident of California. This means that the contract came into existence in California and at that time, the California financial responsibility laws were incorporated by operation of law into the contract.").

Case No.: 5:20-cv-03229-EJD
ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT
5

risk should extend beyond the state where an automobile insurance policy is incepted. However, it can also be argued that Progressive reasonably expected McKinley's four automobiles to remain located in California unless and until McKinley notified Progressive of any changes. It is undisputed that prior to the accident, Progressive was not put on notice of changes to McKinley's residence or changes to the garaging address of his automobiles. These factors support application of California's stacking law. *See Pettis*, 193 Cal. App. 3d at 1608-09 (in a suit by California residents injured in rental car accident in Hawaii, holding that California stacking law applied where policies were issued and delivered in California to domiciliaries of California to cover cars that were registered, used, and garaged in California).

As for South Carolina, it has a strong interest in protecting its citizens, and here, it is undisputed that McKinley was a South Carolina resident at the time of the accident. Applying California law rather than South Carolina law would reduce McKinley's coverage. Nevertheless, on balance, the weight of the other factors discussed above (forum of the contract, the principal location of the insured risk) support application of California law.[7]

Finally, McKinley contends that equitable considerations weigh in favor of applying South Carolina law. To the contrary, equity favors Progressive in this case. Progressive issued a six-month "California Auto Policy" in California to a California resident to insure four automobiles garaged in California. Progressive calculated McKinley's premium for coverage based on the information he provided and other factors. The Policy included a choice of law provision that

---

[7] The cases relied upon by McKinley are distinguishable. *See Stickney v. Smith* 693 F.2d 563 (5th Cir. 1982) (applying Louisiana's "interest analysis," which provides that the forum state in which an accident occurs may be deemed to be (1) the state in which the policy was intended to have effect and (2) the state that has the most significant relationship in determining the application of a standard automobile liability policy, . . . particularly where the vehicle is principally located in such other state); *Parker v. State Farm Ins. Co.* 543 F. Supp. 806, 810 (E.D. Penn. 1982) (applying Pennsylvania's choice of law rules, which combine a governmental interest analysis with a "grouping-of-contacts" approach); *Hurtado v. Superior Court*, 11 Cal.3d 574, 580 (1974) (applying a governmental interest test to determine applicable state law regarding measure of damages in wrongful death action); *State Farm Mut. Auto Ins. Co. v. Sup. Ct.*, 114 Cal. App. 4th 434 (2003) (applying internal affairs doctrine to determine applicable state law governing claims for breach of contract and breach of covenant of good faith and fair dealing based on alleged failure to pay dividends).

Case No.: 5:20-cv-03229-EJD
ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT

6

requires application of California law.  The Policy also imposed a Duty to Report Changes, as well as a provision advising the insured that Progressive may adjust premiums based on changes to the insured's residence and principal garaging address of any covered automobile.  Yet McKinley did not notify Progressive of his change in residence or of a change in the principal garaging addresses of any of his four automobiles prior to the accident.

**IV. CONCLUSION**

For the reasons stated above, the Court **GRANTS** Progressive's motion for summary judgment and **DENIES** McKinley's motion for summary judgment.

**IT IS SO ORDERED.**

Dated:  May 24, 2021

EDWARD J. DAVILA
United States District Judge